The next case is 4121031 W.C. Robert Bockewitz v. Workers' Compensation Comm'n, Freeman, United Quarters, Appalachia. Mr. Keefe, you may proceed. Thank you, Your Honor. Mr. O'Brien, may it please the Court. Jim Keefe on behalf of Robert Bockewitz, who is the employee. He was a 31-year-old coal miner for the employer. On 8-27-07, he was walking between tram cars. He fell, landed on his house, stretched hands. That part, I believe, was accepted by the Commission. That's what they found. He reported the event. He went to the doctor within three days. Commission, and basically he's claimed three conditions as a result of that event. Bilateral carpal tunnel, basically an aggravation of a pre-existing cervical condition. And a left bicep tear that requires surgery. Were any of these, besides the carpal tunnel, was there evidence of earlier accidents that had some bearing on these conditions? He did have several pre-existing conditions and work comp settlements, but nothing near the time of this event in 2007. But did those body parts or injury relate at all to the body parts? Yes, sir, they did. There were two cervical spine settlements, and there was one where it was either a left or right carpal tunnel. I believe it was the left. So did you proceed on an aggravation of a pre-existing condition theory on these? What was your theory? Yes, sir, taking them in order. First, the carpal tunnel was a theory of an aggravation of a pre-existing condition. There is no doubt that he had carpal tunnel prior to August 27, 2007. What does demyelination mean? It means worsening. It's progression and continued to get worse, which was evident in the nerve conduction studies of the hands a week after the accident. Not only that, my client told his doctor three days after the accident he knew his condition was getting worse. It is also undisputed, though, that he was not actually under any treatment for his hands or wrists, i.e. carpal tunnel syndrome, at the time of this event. There is no doubt he was having symptoms if he knew the condition was getting worse, but it was his testimony, and what he reported immediately to the doctor is when he fell on his hands, which the commission accepted, that the symptoms got worse. We know he went to the doctor, and because he said the symptoms got worse, they ordered the nerve studies. He underwent the nerve studies. After that, there was basically an immediate recommendation for surgery. So based upon that chronology, I believe the evidence supports that he did suffer an aggravation, but for that aggravation, he wouldn't have needed surgery. Is there a medical opinion to that effect? No. The doctor we deposed said, I can't say one way or the other, but just based upon the fact that he had not had treatment for years involving his hands and wrists, he has this event. He does report it. The commission accepted that he did hit his hands because they said he had temporary contusions. But the commission felt it was not a new condition, correct? I guess that's what they felt. I mean, they found against it. They did. They found against it. Well, they found that the fact that the demi-elimination had been demonstrated prior to the claimant's accident, they said as well as the evidence that any demi-elimination attributable to the accident would never have manifested itself by the time of the September 4th EMG. Oh, absolutely. So you're saying, oh, no doubt that he had carpal tunnel syndrome. Was the condition in terms of what showed up on the nerve studies the same on August the 26th and September the 4th? It was probably similar. Well, Dr. Gill declined to opine that the carpal tunnel condition would be related to the accident. Yes, I believe his testimony. He had no opinion. Exactly. He did, and I admit that. So how did you prove your case? Based upon the chronologies that he was not having any treatment or not any indirect treatment for his hands or wrists on August the 26th, and in fact not for years according to all the medical records put into evidence. He has an event. He says the symptoms got worse. Now, whether it changed, had he had a nerve study the day before the accident, whether those numbers would have changed, I don't think anybody could say. But the symptoms worked. So that caused him to seek medical treatment. He had the testing but ultimately made a referral for the surgery. So based upon that chronology, I believe the evidence supports that there was a further aggravation of his carpal tunnel condition. What about the cervical condition? The cervical condition, the commission basically said he didn't report neck pain right away. And so assuming that that is the case, clearly something had to happen or he had to report something with the cervical condition because when he got his nerve studies on September the 4th, 2007, about a week after the accident, they ordered a cervical MRI. And I believe the history says it was in light of the worsening symptoms in his arms because of a superimposed trauma. So there's really no other trauma here besides what happened on August the 27th. All right. Dr. Gil will claim that his neck condition was related to the workplace accident, right? It is. He did, Your Honor. Was there any medical evidence to contradict that? The only medical evidence was that he had preexisting findings on cervical MRI 10-plus years or around 10-plus years prior to the accident. He was light at the hand and the wrist. He was not under any active medical treatment at the time of this event on August the 27th. Did the MRI indicate anything, any type of exacerbation or change? There was no change in, according to the radiologist's interpretation, I believe at the C6-7 level. I believe that the report's read very simply. So, again, it has to do with symptoms as opposed to an actual change in the physical pathology, which would go to the opinion of aggravation. Well, then why is the finding against the manifest weight? The condition remains unchanged. Well, the condition does not remain unchanged because there was an aggravation of the condition. An aggravation bringing about symptoms. As demonstrated by what? By his testimony, which fits with the chronology of events. He was not under medical care. He falls, he has nerve conduction studies, and they order an MRI for superimposed trauma within one week of the event. A person has a condition, and then something happens. And subsequent to the event, the condition is exactly the same. How in heaven's name can you say it's aggravated? Because it now requires treatment, testing and treatment. So if you have underlying degenerative disc disease or even a disc herniation, in Mr. Bakowitz's case, and he's not having any symptoms, he's not going to get treatment. If he has an event that produces symptoms that results in, that forces him to have more testing and treatment, then yeah, that's a. . . Well, can that happen if the condition never changes? Well, yes. I mean, clear in this case, based upon Dr. Yale's testimony, even if you have those preexisting findings, that can be, it can aggravate it. It can make it. . . No question you can aggravate a condition and make it worse. But when you aggravate it and make it worse, it certainly isn't the same. Yeah, not the same, but I'm saying in terms of the actual anatomy versus what that anatomy is producing in terms of symptoms. Well, you've got to define the term condition. What is the condition? You're saying the condition is symptomology. Carat was the only change. Right. Correct. Okay. There was no, according to the MRI reports, change in the actual anatomy at, for instance, C6.7. Not the anatomy. Yes, sir. So based upon the chronology of both the carpal tunnel and cervical spine, i.e., he was not undergoing an active medical treatment. He had an event that was reported. He has immediate testing and treatment for those conditions. So he had an aggravation of the symptomology, really. Correct. But for that, he would not have needed treatment. Is that compensable? Yes, because but for it, he would not have required treatment. So he required treatment to get rid of those symptoms. Yes, sir. Okay. As for the left bicep, the commission said he didn't report a left shoulder problem, which in all the early medical records for the first basically year, he did not say left shoulder. The question is, it was ultimately diagnosed as a left bicep. After Romanelli testified, I would consider the bicep as part of the arm. And if you look at the early medical records, there are arm complaints. It's in the records. It doesn't spell out bicep, but it does say arm complaints. So his testimony that, well, this is where my pain was, is not totally inconsistent, as the commission found, with what was in the early medical records. And for that reason, there's really no other explanation for the bicep tear other than the mechanism of him falling forward on his outstretched arm. So if there's no further questions. Thank you, counsel.  May it please the court, Mr. Keith. My name is Dennis O'Brien. I represent Freeman. In this claim, he is alleging that he hurt, as you know, the carpal tunnel, the neck, shoulder. The commission didn't agree with his contention, denied all of those, and he has numerous problems for that. As you pointed out, he has preexisting conditions. The carpal tunnel goes back to the early 1990s. He had two EMGs back then. He had symptoms back then. He had symptoms that continued. He told Dr. Sinha that he'd been having worsening of that for 10 years prior to this. So it's not like, you know, he said he wasn't getting treated. No, but he was hurting. He was having problems for 10 years. Three days after this accident, he saw Dr. Gill. He told him about the carpal tunnel. He said, oh, I have carpal tunnel. He didn't ask the doctor for his diagnosis. He said, I have carpal tunnel, and it has been getting worse. So we have him telling Dr. Sinha that it's getting worse. We have him telling Dr. Gill it's getting worse. Also, he filed a previous workers' compensation claim for carpal tunnel. It was a claim for bilateral carpal tunnel, exactly what he's claiming now. He settled the case, and he settled it, and they only gave money on one. But the claim was for both, and he settled on the left. He had about a week after this accident, an EMG that did not show changes, could not show changes to Dr. Gill for something that occurred on August 27, 2007, because it takes weeks for those changes to take place. Justice Hoffman, demyelination. Demyelination is the covering of the nerve sheath. Demyelination takes place over a long period of time, and it's actually the destruction of that protective sheath. This man had demyelination in the 1990s. I don't think the counsel is disputing. He candidly acknowledged he had all his preexisting conditions. His theory is that this particular incident or incidents caused aggravation of a preexisting condition, which arguably, as you know, is a compensable theory. It doesn't have to be the sole cause or the only cause. So what's your response if this is not an aggravation of what we all acknowledge are preexisting conditions? He still has the burden of proving that there is an aggravation. He had these preexisting EMGs. They showed this condition with the demyelination. He hasn't proved any aggravation. Now, he says his complaints are the aggravation. There's no physical proof of an aggravation. So, of course, credibility goes into everything else because his symptoms are all subjective. And this pertains to all three conditions, right? Absolutely. Absolutely. So you would be here if the award was made, everything remains the same, and you would be arguing this is subjective and there's no physical change in the condition? I wouldn't. I'm glad I'm not in that position. But there isn't an award. You're absolutely right in that. I certainly would be here making the argument that there's no change, that that would be against the manifest way because there's no proof. Okay, so you are saying that there has to be anatomically an identifiable change. Not necessarily. There can be occasions. I mean, for instance, if the fellow had new complaints that followed a nerve root distribution, say a sciatica down the leg or something like that, where the complaints are new and he didn't have those before, and now he has this new thing from the aggravation and it follows an anatomical pattern, there may not be proof of that nerve, there may not be a bulge hitting a nerve, etc., but all of the physical findings correlate with this new symptom, I can see that argument being made, absolutely. Okay, but what about, I guess, when we're talking about aggravation, it seems to me there's a concept called acceleration of symptomology. And there's no testimony to that in this. Okay, right. But that, I'm talking hypothetically, that that could be a compensable. It could. We hear that all the time with arthritis. Even though there's no specific anatomical change that's visible, under that theory. Well, and usually we don't have the luxury of preexisting MRIs, CAT scans, EMGs, and we don't see a serial thing. We say, well, this man has had degenerative disc disease, for instance, for quite some period of time. What we're seeing is the first snapshot of it in this MRI, but we think it will probably increase in speed because of this. We see that argument all the time. In this case, however, we have those serial EMGs. We have those serial MRIs. And they show no change. Anatomically. Absolutely. But you can have a change both, an intensification change, too, can't you? If you believe the man. Right. That becomes very, and when you look at the left bicep and his neck case and his history changes and all that, they didn't believe the man. Well, in addition to that, his own doctor justified he had no abrasions, no wrist swelling, and absolutely no signs of trauma three days after the alleged accident. He already had the shoulder complaints or the neck complaints. They were all very much late coming on, almost three years in the case of the shoulder. This man wasn't believable. Just plain wasn't believable. So can I ask you a question? Yes. After the commission found for you, why did they send the, why did the circuit court send the case back under Thomas? Why did the commission remain in this case under Thomas? I can explain that. Okay. They denied the carpal tunnel, they denied the neck, and they denied the shoulder. They did find that he had, this was tried as an ITB, he had contusions. He had fallen on his hands. There was no denial of that. He had contusions to his hands, which basically had resolved, but is there a permanency on the contusions? That's the Thomas remand. All right. As to the neck, it didn't come up for months, three months or so later. And in the meantime, he'd seen doctors. He'd seen Dr. Gill, made no neck complaints. He'd seen Dr. Fortin, and he specifically wrote in his records, no neck complaints. He'd seen Dr. Sinha, no neck complaints in his records. He doesn't come on for three months. I mean, the man is not believable. He's trying to, anything that goes wrong, he's going to try to complain on this. As shown by 34 months later seeing Dr. Romanelli and saying, oh, I injured my arm in this fall, I injured the shoulder, and he changes his history. Again, we go to the credibility. Whereas he had told Dr. Gill and the others that he had fallen on his outstretched hands, now he's got a shoulder complaint. He doesn't know that he had fallen. I've got a better history than that. When he sees Dr. Romanelli, he says, I fell. And as I was falling, I grabbed the handle of a machine and yanked my arm backwards. That's a big change in history 34 months later. And as Dr. Romanelli pointed out, you can't do both. You can't have them both in front of you and behind you. And he didn't know until his deposition when he had to go back and look in the medical records, which are in his file, that this man had given a totally different history. It wasn't to a cross-examination, and that was pointed out to him. He said, no, those are not. And he also said, in regards to the shoulder, with this injury, the bicep injury, insertion into the shoulder, with that injury, if he had done it at the time of this accident, he would have had complaints right then. And guess what he didn't have? He didn't have any complaints right then. There's a burden of proof. They didn't mean it. In large part, that's because he wasn't believable. We would ask that the decision of the commission be affirmed. Thank you. Counsel? Yes, just to make very brief points. With respect to the bicep, I believe Dr. Romanelli testified, is that, yeah, it's plausible. You could fall forward, catch your arm, and then fall on your outstretched hands. But that was not in the early history. He just said fall on outstretched hands. But I believe Dr. Romanelli testified, there's two ways that the bicep will tear. Either you grab it like this, or you fall on your outstretched hands. So I believe there is medical testimony on either mechanism. The commission accepted falling on your outstretched hands could cause or aggravate that bicep tear. And, again, he didn't report specifically shoulder pain. Within a week, though, he did say arm pain. As for the commission's finding that he had contusions on his hand, but then Dr. Sinha says three days after the accident there's no bruises or anything, it doesn't really seem to match up, especially because he probably didn't have bruises on his hand or contusions, as found by the commission, because he was wearing gloves. That was the testimony. So there just seemed to be some misinterpretation by the commission in that regard to say he suffered contusions. That was never a diagnosis. In fact, he was wearing gloves when he fell. Thank you, counsel. It's a matter of particular advisement. This position shall issue.